IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

AL JABBAR SALAM                                                          PLAINTIFF

V.                                    CIVIL NO. 1:12-cv-01040

JANET DELANEY; SGT. COLLIER;
SGT. MEEKS; SGT. RICHARDSON;
 JAILER PITTS; JAILER EDWARD;
JAILER TURNER; JAILER MURPHY;
TINA RICHARDSON; W. ROBINSON;
DOUG WOODS; and SHERIFF MIKE LOE                                         DEFENDANTS

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Al Jabbar Salam filed this civil rights case pursuant to 42 U.S.C. § 1983.  He

proceeds *pro se* and *in forma pauperis*.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and

(3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the

undersigned for the purpose of making a report and recommendation.

Currently before me is Plaintiff's Motion for Summary Judgment.  ECF No. 37.

Defendants filed a Response to the Motion for Summary Judgment.  ECF No. 40.  Plaintiff replied.

ECF No. 42.  Also, before me is Defendants' Motion for Summary Judgment.  ECF No. 48.

Plaintiff responded with the aide of a Court prepared questionnaire.  ECF No. 75.  After

considering all of the briefing the undersigned issues the following Report and Recommendation.

## I.    BACKGROUND

Plaintiff is currently incarcerated in the Arkansas Department of Correction Varner Unit

in Grady, Arkansas.  During the time at issue in this case, Plaintiff was incarcerated in the

Columbia County Detention Center ("CCDC").  Plaintiff originally filed his Complaint on April

1

26, 2012 (ECF No. 1) and then filed an Amended Complaint on July 18, 2012 (ECF No. 10).

     In his Amended Complaint, Plaintiff names Sgt. Collier, Sgt. Tina Robinson, Mr. Richardson, Mr. Pitt, Mr. W. Robinson, Officer Turner, Mr. Edwards, Deputy Sheriff Doug Woods, Mr. Murphy, and Sheriff Loe, as defendants in this matter.  ECF No. 10, pp. 3-5.  Plaintiff makes both official and individual capacity claims against all of the Defendants.

     In his Amended Complaint Plaintiff specifically claims: (1) Defendant Delaney denied him medication on March 19, 2012 (ECF No. 10, p. 8); (2) Defendants Robinson, Richardson, Murphy, Collier, Pitts, and Turner denied him grievance forms on December 15, 2011, and between December 16 and July8, 2012 between the times of 8:00 a.m. and 4:00 a.m. and on the weekends in violation of CCDC policy (ECF No. 10, p. 8, 14); (3) each Defendant denied Plaintiff freedom of speech by failing to send his letters to his wife because they contained sexual content (ECF No. 10, p. 8); (4) Defendant Delaney retaliated against Plaintiff for complaining about his letter by enacting a postcard only policy (ECF No. 10, p. 8); (5) the postcard only policy is unconstitutional (ECF No. 10, p. 8); (6) all Defendants denied Plaintiff mail (ECF No. 10, p. 8); (7) all Defendants violated CCDC correspondence policy (ECF No. 10, p. 8); (8) on June 6, 2012, he was discriminated against, based on race, when he was locked down after a fight with a white inmate and the white inmate was not punished (ECF No. 10, p. 9); (9) he was placed in "punitive lock down" on June 6, 2012 "with a court hearing per policy," all of his property was confiscate at this same time, and he has been in "punitive isolation or segregation for 33 days" (ECF No. 10, p. 9); (10) the shift sergeant is not addressing his grievances per unit policy (ECF No. 10, p. 9); (11) on June 7, 2012, Defendant Delaney threatened Plaintiff with bodily harm (ECF No. 10, p. 10); (12) he was denied access to the law library on December 21, 2011 (ECF No. 10, p. 10); (13)

Defendants Collier, Murphy, and Robinson denied Plaintiff his "Fedreal mail" between June 24, 2012 and June 30, 2012 pursuant to Defendant Delaney's orders (ECF No. 10, p. 10) (errors in original); (14) all Defendants denied Plaintiff a section 1983 form (ECF No. 10, p. 11); (15) the grievance procedure is not followed at the CCDC (ECF No. 10, p. 11); (16) on May 23, 2012, Plaintiff was informed he would not be given a pork-free meal "to uphold [his] Religious belief as a Muslim of All-Islaim pursuant to Defendant Delaney's order (ECF No. 10, p. 12); (17) his due process rights were violated when he was moved, by Defendant Delaney, on May 14, 2012 "for no reason at all" to Pod 17 (ECF No. 10, p. 11); (18) he was discriminated against, based on race, when Defendant Delaney ordered, on June 7, 2012,  he could only have one book per week while the white inmates could have as many as their families mailed, and white inmates are never punished for breaking the rules (ECF No. 10, p. 12); (19)  Defendants Loe and Woods "Inaction to act" against Defendant Delaney's orders caused Plaintiff mental anguish (ECF No. 10, p. 12); (20) Defendants Woods, Delaney, and Loe denied Plaintiff medication for his "mental problems" (ECF No. 10, p. 12); (21) Defendants Collier and Murphey destroyed Plaintiff's witness statements and Defendant Delaney threatened to lock one of Plaintiff's down for writing a witness statement for him (ECF No. 10, p. 14); (22) he was charged for "indigent items" given to him (ECF No. 10, p. 14); (23) he is being denied medical care for a hernia (ECF No. 10, p. 14); (24)  Defendant Delaney locked Plaintiff down in Pod 5 on December 29, 2011 for telling other inmates  she cannot violate their probation, and Defendant Delaney uses Pod 5 to intimidate African American inmates (ECF No. 10, p. 15); (25) he was denied mental health treatment (ECF No. 10, p. 15); (26) Defendant Delaney is violating the CCDC inmate handbook (ECF No. 10, p. 15-16); (27) he was denied due process on June 6 or 7, 2012 during a disciplinary hearing because the hearing was not

recorded, Plaintiff was not given a disciplinary form or appeal form (ECF No. 10, p. 16).

Plaintiff filed a Motion for Summary Judgment on September 30, 2013.  ECF No. 37. Defendants responded on October 9, 2013.  ECF No. 40.  Plaintiff replied on October 16, 2013.

On November 7, 2013, Defendants filed a Motion for Summary Judgment.  ECF No. 48. Plaintiff filed a Response on November 19, 2013.  ECF No. 55.  Plaintiff filed a second Response on April 15, 2014 using a questionnaire prepared by the Court.  ECF No. 75.

## II.   LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).  The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

4

### III.   DISCUSSION

A.   Plaintiff's Motion for Summary Judgment (ECF No. 37)

In Plaintiff's Motion for Summary Judgment he only moves for summary judgment on his mail claims, therefore, Plaintiff only moved for partial summary judgment.  Specifically, Plaintiff states he is moving for summary judgment "against the defendants for denying Plaintiff to Receive Letters thou The United Postal Service & Family . . . ."  ECF No. 37, p. 1 (errors in original). Plaintiff explains he was wrongly denied the ability to send out mail containing "sexual content." In support of his Motion, Plaintiff cited *Turner v. Safley*, 482 U.S. 78 (1987) and *Procunier v. Martinez,* 416 U.S. 396 (1974) and attached two grievances from the CCDC dated February 20, 2012 and December 30, 2011 and a "First Motion for Admissions."  The Motion for Admissions appears to be what Plaintiff submitted to Defendants during discovery but does not contain Defendants' responses.

Defendants responded to Plaintiff's Motion for Summary Judgment arguing Plaintiff's Motion for Summary Judgment should be denied because it was not properly set forth or supported pursuant to Federal Rule of Civil Procedure 56.  Specifically, Defendants argue Plaintiff (1) failed to specifically set forth each claim or defense on which summary judgment is sought pursuant to Rule 56; (2) did not properly support the Motion pursuant to Local Rules 7.2(a) and 56.1(a); and (3) failed to file a statement of facts pursuant to Local Rule 56.1(a).

While Plaintiff may have failed to comply with procedural rules in filing his Motion, the same First Amendment claim argued in his Motion is at issue in Defendants' Motion for Summary Judgment currently before me.  Therefore, I considered the merits of whether there are genuine issues of material fact as to Plaintiff's First Amendment mail claims below in connection with

Defendants' Motion for Summary Judgment and incorporate those findings here.  Accordingly, as explained in detail below, Plaintiff's First Amendment claim regarding the letter from his wife fails as a matter of law, and Plaintiff's Motion for Summary Judgment should be denied.

      B.    <ins>Defendants' Motion for Summary Judgment (ECF No. 48)</ins>

Plaintiff's Amended Complaint contains the following categories of official and individual capacity claims: (1) claims related to Plaintiff's mail; (2) First Amendment claims related to Plaintiff's religion; (3) a conditions of confinement claim; (4) denial of medical care claims; (5) claims related to the procedures at the CCDC; (6) retaliation and threat claims; (7) discrimination claims; (8) access claims; and (9) due process claims.

Defendants moved for summary judgment on Plaintiff's (1) due process claims relating to his segregation; (2) short-term mail delay claim; (3) First Amendment claims relating to the CCDC's postcard only policy, and the denial of personal mail from wife claim; (4) First Amendment claim relating to the denial of a pork-free diet; (5) access claims relating to denial of a law library; (6) denial of medical care claim related to the denial of pain medication; and (7) violation of the CCDC internal policies and procedures claims.  Defendants also make arguments that Plaintiff failed to state any official capacity claims, failed to allege personal involvement of Defendants Loe and Woods, and failed to allege any physical injuries.  Finally, Defendants argue they are entitled to qualified immunity on Plaintiff's conditions of confinement claims, due process claims relating to the administrative segregation, and the postcard only policy.  ECF No. 49.[1]

As an initial matter, Defendant did not move for summary judgment on: (1) Plaintiff's

---

[1] Defendants also moved for summary judgment on conditions of confinement claims relating to yard call and adequate nutrition, however, Plaintiff did not assert these claims in his Amended Complaint, therefore, I need not address them herein.

condition of confinement claim that he was required to pay for indigent items; (2) Plaintiff's denial of medical care claim relating to his hernia and his mental health; (3) Plaintiff's claims that Defendants failed to follow the CCDC correspondence policy and inmate handbook; (4) Plaintiff's retaliation and threat claims; (5) Plaintiff's discrimination claims; and (6) Plaintiff's due process claims relating to his property or the June 6 or 7, 2012 diciplinary hearing.[2] I am, however, able to address Plaintiff's indigent items claim, medical care claim relating to his hernia, correspondence policy and handbook claims as matters of law or based on the current record. I am unable, based on the current record, to address Plaintiff's claims that he was denied mental health care, retaliated against and threatened, and discriminated against. Therefore, these claims will remain.

### 1.  Official capacity and personal involvement

First, Plaintiff alleged both official and individual capacity claims against all of the Defendants. Defendants argue Plaintiff's Complaint is devoid of any alleged custom or policy of Columbia County which resulted in a violation of his constitutional rights and instead Plaintiff argues Defendants violated CCDC policy. Plaintiff contends in his Response, a custom, policy, or practice of Columbia County deprived him of his federal constitutional rights but he does not explain what custom, policy or practice violated his rights. Plaintiff gives no explanation of his official capacity claims even though specifically prompted to do so.

Under section 1983, a defendant may be sued in either his individual capacity, or his

---

[2] Defendants argued Plaintiff's attempt to challenge his criminal conviction relating to the altercation with inmate Norris on June 6, 2012 was barred by *Heck v. Humphrey,* 114 U.S. 129 (1994). I, however, construe Plaintiff's challenge to be one to the process of a diciplinary hearing related to the altercation not to his conviction on criminal charges related to the altercation.

official capacity, or in both.  In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits.  As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available.  *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).  Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself.  *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991).  Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense.  *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir.1998).  An official capacity claim against Defendants is essentially a claim against Columbia County.  "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's constitutional rights.  *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 (1997).

The Court asked Plaintiff to explain his official capacity claims and he did not respond.  ECF No. 75, p. 52.  Further, Plaintiff claims in his Amended Complaint that Defendants violated policies of CCDC.  These claims contradict his claim that it was a CCDC policy that violated Plaintiff's constitutional rights.

Additionally, a claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability.  *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978).  In other words, Columbia County cannot be held liable based merely on the fact

it employs Defendants.  Therefore, there are no genuine issues of material fact regarding Plaintiff's official capacity claims and these claims fail as a matter of law.

Further, Plaintiff claims  Defendants Wood and Loe violated his constitutional rights by thier "[i]naction to act against Lt. Delaney & all named defendants." (ECF No. 10, p. 12).

As stated above, a claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability.  *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978).  "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Whitson v. Stone County Jail,* 602 F.3d 920, 928 (8th Cir. 2010) ("In a § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as respondeat superior or supervisor liability") (internal quotations omitted); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.  To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights."  *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)).  In other words, Defendants Loe and Wood cannot be held liable merely because they hold supervisory roles over those officers personally involved in the incidents complained of by Plaintiff.

A supervisor may, however, "incur liability . . . for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or

tacit authorization of the violative practices." *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010) (quoting *Choate v. Lockhart,* 7 F.3d 1370, 1376 (8th Cir. 1993)).

Plaintiff made no allegation in his Amended Complaint indicating Defendants Loe or Wood had knowledge of the complained of actions but failed to act.  Further, Plaintiff failed to allege facts indicating the alleged inaction rose to the level of deliberate indifference.  When asked specifically in his Response how Defendant Loe violated his constitutional rights Plaintiff responded "1st, 4th, 5th, 8th, 14th amendments" and when asked how Defendant Woods violated his constitutional rights Plaintiff responded "1st, 4th, 5th, 8th, 14th amendments." ECF No. 71, p. 55.

Accordingly, there are no genuine issues of material fact regarding Plaintiff's inaction claims against Defendants Loe and Wood and these claims fail as a matter of law.

### 2.    Mail claims

In his Amended Complaint, Plaintiff claims (1) he was denied freedom of speech by the CCDC refusing to mail his letter to his wife because it contained sexual content; (2) all of the Defendants denied him mail; and (3) the CCDC postcard only policy is unconstitutional.  I presume, as Defendants did in their Motion,  the mail Plaintiff complains of being denied was the same letter from his wife containing sexual content complained of in Plaintiff's original Complaint.  Defendants argue: (1) an isolated instance of a piece of non-privileged mail being delayed does not rise to the level of a constitutional violation; (2) the CCDC postcard only policy did not violate Plaintiff's constitutional rights; and (3) Plaintiff was not denied the letter from his wife, instead, it was only delayed.  Defendants also argue, even if the Court finds the postcard only policy violated Plaintiff's constitutional rights, Defendants are entitled to qualified immunity on this claim.

I will address each claim in turn below.

a.    Letter to wife

There are very little facts on the record regarding Plaintiff's claim that a letter he attempted to mail his wife was refused mailing because of its sexual content.  There is no indication of whether the letter was ultimately mailed, returned to Plaintiff, or destroyed.  Further, there is very little argument regarding this letter in either Defendants' Motion or Plaintiff's response.

Defendants argue Plaintiff's allegation that his personal, non-privileged mail was delayed on one occasion does not rise to the level of a constitutional violation.  First, I am unsure if Defendants intended this argument in response to Plaintiff's claim regarding the letter to his wife or the letter from his wife.  Further, the argument fails to recognize Plaintiff's letter to his wife was not sent based on the sexual content of the letter.  The letter was not confiscated or delayed by some issue with the mail system at CCDC, but instead, according to Plaintiff, censored based on its content.

This allegation by Plaintiff states a First Amendment claim related to the letter intended for mailing to his wife but there are insufficient facts and arguments on the record to throughly analyze whether there are genuine issues of material fact relating to this claim.  Accordingly, I recommend Defendants' Motion for Summary be denied as to this claim at this time.

b.    Letter from wife

The record shows Plaintiff was not denied the letter from his wife, but the letter was delayed.  Defendant Delaney confiscated a letter from Plaintiff's wife sent to Plaintiff based on its sexual content.  Defendant Delaney placed this letter in Plaintiff's property.  Plaintiff wrote grievances regarding Defendant Delaney's action.  Defendant Delaney then reevaluated the decision

to confiscate the letter and gave the letter to Plaintiff.  Plaintiff now has the letter "on his person."  Plaintiff's Deposition, ECF No. 50-1, Delaney Affidavit, ECF No. 50-2.

Had a complete denial of Plaintiff's letter from his wife based on its sexual content occurred, it would implicate the First Amendment.  However, that is not what occurred here.  Defendant Delaney initially denied Plaintiff's letter based on its sexual content and then after Plaintiff availed himself of the CCDC grievance procedure, Defendant Delaney re-reviewed the letter and determined it should be given to Plaintiff.  The letter was given to Plaintiff to keep on his person.  Plaintiff explains in his deposition  his claim against Defendant Delaney regarding the letter from his wife is that Delaney violated the CCDC handbook when she initially denied him the letter, therefore, delaying his receipt of the letter until after he filed the grievances.  ECF No. 50-1, p. 17.  An internal jail policy or procedure does not create a constitutional right, nor does the failure to follow such a regulation rise to the level of a section 1983 claim.  *See Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996).

Accordingly, Defendant Delaney's failure to follow the CCDC handbook with regards to the letter from Plaintiff's wife does not rise to the level of a constitutional violation, and this claim fails as a matter of law.

c.   Postcard policy

Next, Plaintiff claims the CCDC postcard only policy ("Policy") violates his constitutional rights.[3]  Defendants argue the Policy did not violate Plaintiff's constitutional rights and even if it did Defendants are entitled to qualified immunity on this claim because there is no case law

---

[3] Plaintiff also claims this policy was enacted as retaliation for his complaints regarding his letter from his wife.  Defendants did not move to dismiss the retaliation claim, therefore, it is not addressed herein.

holding a postcard only policy introduced to control contraband as unconstitutional.

In addressing qualified immunity I must, considering the facts in the light most favorable to Plaintiff, determine whether the officer's conduct violated a constitutional right, and if it did, whether the right was "clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted."  *Moore v. Indehar*, 514 F.3d 756, 759 (8th Cir. 2008) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

The record indicates Plaintiff complained to Defendant Delaney regarding letters between himself and his wife that were confiscated due to the sexual content of the letters.  Plaintiff was eventually allowed to have the disputed letter from his wife but there is no indication on the record whether the disputed letter to Plaintiff's wife was ever sent or returned to Plaintiff.  ECF No. 50-1, pp. 59-61.  Subsequent to this dispute, Defendant Delaney, as Jail Administrator of the CCDC, instituted the Policy at the CCDC.[4]

The Policy required all correspondence for personal detainee mail to be on post cards. Detainees were allowed to send and receive as many postcards as they desired at their own expense and indigent inmates were given two post cards per week.  Inmates were still allowed to send and receive legal and religious mail in envelopes.  During all times, regardless of the Policy, inmates retained the right to visitation and phone use.  Delaney Affidavit, ECF No. 50-2.

Defendants purported reason for instituting the Policy was to prevent contraband from entering the CCDC.  Delaney Affidavit, ECF No. 50-2.  Plaintiff claims, however, Defendant

---

[4]It is unclear from the record how much time elapsed between Plaintiff's grievances regarding his correspondence and the institution of the Policy, however, it does appear the letter from Plaintiff's wife was placed in his property in January 2012 and the Policy was enacted in March 2012.  Plaintiff's Response, ECF No. 75, pp. 16-17.

13

Delaney enacted the Policy in response to his grievances over the disputed correspondence between himself and his wife, and  the policy infringed on his First Amendment rights.  ECF No. 10.  After the enaction of the Policy, Plaintiff sent and received post cards with his wife and others through the CCDC mail system.  Plaintiff's Mail Log, ECF No. 50-5.

It is well established that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  *Leonard v. Nix,* 55 F.3d 370, 374 (8th Cir. 1995) (internal quotations omitted).  Among other things, the "Constitution protects the rights to receive information and ideas."  *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972).  Further, prison regulations on incoming mail must be "reasonably related to legitimate penological interest."  *Thornburgh v. Abbott*, 490 U.S. 401, 413-14. (1989) (citing *Turner,* 482 U.S. at 89.).  Specifically, the Eighth Circuit Court of Appeals held  "prison officials may lawfully censor prison mail that is detrimental to the security, good order and discipline of the institution," however, this mail policy "must advance a legitimate penological interest."  *Kaden v. Slykhuis,* 651 F.3d 966, 968 (8th Cir. 2011) (internal quotation marks and citation omitted).

Defendants assert the legitimate penological interest supporting the Policy is to prevent the introduction of contraband into the CCDC.  Delaney Affidavit, ECF No. 50-2.  It is well established that controlling contraband, and specifically sexually explicit material, is a legitimate security interest.  *See Dawson v. Scurr*, 986 F.2d 257, 260 (8th Cir. 1993) (holding security, rehabilitation, and prevention of sexual aggression among inmates were all valid penological goals) (citing *O'Lone v. Estate of Shabazz,* 482 U.S. 342 (1987)); *see also Pell v. Procunier,* 417 U.S. 817 (1974). *See also Harris v. Bolin*, 950 F.2d 547, 549 (8th Cir. 1991) (a policy that allows prison

14

officials to reject incoming mail deemed detrimental to the security of the unit does not violate the First Amendment); *Carpenter v. South Dakota,* 536 F.2d 759, 763 (8th Cir.1976) (concluding the receipt of sexually explicit materials would have a detrimental effect upon inmate rehabilitation). *See also Wickner v. McComb,* 2010 WL 3396918, at *5 (D. Minn. July 23, 2010) (unpublished opinion) (maintaining prison security, rehabilitating sex offenders, and reducing sexual harassment of prison guards were all legitimate penological interests and a prison regulation banning sexually explicit materials from the prison unit was rationally related to these interests).

However, there is no case law in the Eighth Circuit addressing whether a postcard only policy such as the Policy instituted here is rationally related to a legitimate penological interest such as controlling contraband.  Further, District Courts outside of this circuit that have addressed this issue have come to contradictory conclusions.  *See e.g., Althouse v. Palm Beach County Sheriff's Office,* Civil No. 12-80135, 2013 WL 536072 (S.D. Fla. Feb. 12, 2013) (holding  a postcard only policy to decrease the amount of contraband that enters the jail is rationally related to prison security); *Covell v. Arpaio,* 662 F.Supp2d 1146 (D. Ariz. Sept. 24, 2009) (holding  a mail policy only allowing metered postcards for non-privileged mail was reasonably related to the legitimate penological interest in reducing contraband smuggling).  *Compare, Prison Legal News v. Columbia County,* 942 F.Supp.2d 1068 (D. Ore. April 24, 2013) (a policy prohibiting inmates from receiving mail not on postcards violated the First Amendment because it was not rationally related to preventing receipt of contraband and enhancing jail security when there was no indication a postcard only policy was more effective at preventing introduction of contraband than the jail's prior policy of opening and inspecting incoming letters).

Accordingly,  I find no clearly established law regarding a "postcard only" mail policy

15

existed at the time Defendant Delaney instituted the policy at issue and therefore, a reasonable official would not have understood this policy to be unlawful in this situation. For this reason, Defendant Delaney is entitled to qualified immunity regarding Plaintiff's postcard only mail policy claim.

### 3.    Religion claims

Plaintiff claims he was denied a pork-free diet in violation of his First Amendment rights. Defendants argue Plaintiff's claims relating to the pork are solely based on speculation. According to Defendants, Plaintiff has offered no proof  he was ever required to eat any pork products while incarcerated at the CCDC  or  any proof a Defendant intentionally served him pork. Finally, Defendants argue Plaintiff has not shown he suffered any physical harm as a result of this alleged constitutional violation.

As explained above, "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *see also Cruz v. Beto*, 405 U.S. 319 (1972). However, this right is not without limitation. The Supreme Court has recognized  "incarceration brings about the necessary withdrawal or limitation of many privileges and rights." *O'Lone*, 482 U.S. at 348. Like with the freedom to receive ideas, "the free exercise right is limited insofar as a prisoner's adherence to religious practices may be regulated by prison authorities, so long as such regulations are' reasonably related to legitimate penological interests.'" *Murphy v. Carroll*, 202 F. Supp. 2d 421, 424 (D. Md. 2002)*(quoting Turner*, 482 U.S. at 89; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-349 (1987); *Cruz*, 405

U.S. at 322)); *see also Thomas v. Gunter*, 32 F.3d 1258, 1259-60 (8th Cir. 1994).  "A prisoner need not be afforded his preferred means of practicing his religion as long as he is afforded sufficient means to do so."  *Murphy v. Missouri Department of Corrections*, 372 F.3d 979, 983 (8th Cir. 2004).  Specifically, it has been held  inmates are entitled to a diet sufficient to sustain health and satisfy religious dictates.  *See McElyea v. Babbitt,* 833 F.2d 196, 198 (9th Cir. 1987).

In order to present a valid First Amendment claim in this context, Plaintiff has the "burden of establishing that the alleged religious belief or ritual in question [a pork-free diet] is based on a teaching of the religion [Islam], that [Plaintiff's] belief in the teaching is sincerely held, and that the governmental action in question actually infringe[d] upon [his] free exercise of this belief." *Goff v. Graves,* 362 F.3d 543, 547 (8th Cir. 2004).

Defendants do not contest that a pork-free diet is a tenet of Islam or that Plaintiff's proclaimed beliefs as a Muslim are not sincerely held.  Instead, Defendants argue Plaintiff was not denied a pork-free diet by and Defendant, and he has failed to show he was actually served pork, or ingested pork.

It is undisputed that no named Defendants work in the CCDC kitchen.  Further, the cooking at the CCDC is done by trustee inmates and these inmates were informed by Defendant Delaney that Plaintiff's meals were to be prepared without the use of pork.  Delaney Affidavit, ECF No. 50-2.  Additionally, on one occasion when Plaintiff was given a meal tray containing pork, Defendant Delaney ordered that he was to be served a pork-free meal.  ECF No. 75, p. 24.  Finally, the CCDC has pork alternatives made of turkey to offer inmates on a pork-free diet.  ECF No. 50-2.

First, Plaintiff only complains of one isolated incident in his Amended Complaint—that he was informed he would not receive a pork-free meal on May 23, 2012.[5]  In his Response, Plaintiff claims  Defendants Delaney, Murphy, and Collier informed him he would not receive a pork-free meal on May 23, 2012.  ECF No. 75, p. 22.  Plaintiff also claims, in his Response, he now suffers high blood pressure as a result of consuming pork while incarcerated in the CCDC, however, no medical professional informed Plaintiff eating pork was the cause of his high blood pressure.  ECF No. 75, p. 23.  Further, Plaintiff also claims in his Response, fellow inmates informed Plaintiff he had eaten food with pork in it while incarcerated at the CCDC.  ECF No. 75, p. 25.  When asked if he was ever offered a meal solely of pork, Plaintiff responded  he did not understand the question and stated: "I was given pork until I caught them at it."  ECF No. 75, p. 26.

Despite Plaintiff's allegations in his Response, the summary judgment record indicates Plaintiff was not denied a pork-free diet by any named Defendant.  Plaintiff may not rest on mere allegations that Defendants denied him a pork-free diet when faced with factual evidence to the contrary.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).  Further, Plaintiff himself testified at his deposition that when he complained about being served a meal with pork in it, he was given a new meal tray.  ECF No. 75, pp. 24-25.

Additionally, Plaintiff's arguments that he was served beans prepared with pork, and his high blood pressure is a result of eating these beans, are not material to the issue before me.  The record indicates non-defendants prepared and served the food at the CCDC and these non-defendants were informed by Defendant Delaney that Plaintiff was to receive a pork-free diet.

---

[5]  Furthermore, when asked in the Court prepared questionnaire whether he was denied a pork-free diet after May 23, 2012 Plaintiff only responded  he could not remember the date.

Therefore, even if Plaintiff was inadvertently or negligently served beans made with pork by non-defendants, Plaintiff failed to show any Defendants were responsible for this conduct. *See Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.").

Accordingly, there are no genuine issues of material fact as to whether Plaintiff was denied a pork-free diet in violation of his First Amendment rights.

### 4.    Condition of confinement claims

Plaintiff claims he was charged for indigent items in violation of his constitutional rights. While Defendants did not move for summary judgment on this claim, I am able to address it herein as it fails as a matter of law.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Here, Plaintiff was a pre-trial detainee at the time of the alleged incidents, however, the Eighth Circuit applies the same deliberate indifference standard to pretrial detainees as applied to convicted inmates. *See Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006) (deliberate indifference standard of the Eighth Amendment applies to claims, brought by pretrial detainees and convicted inmates, that prison officials failed to provide adequate food, clothing, shelter, etc.). The Eighth Amendment to the United States Constitution

prohibits the imposition of cruel and unusual punishment.  U.S. Const. amend. VIII.   The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions involving "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element.  *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities.  The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner"  *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted).  Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety."  *Revels,* 382 F.3d at 875.   The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

Plaintiff does not claim he was denied necessary hygiene items, instead, he only claims he was charged for such items when money was deposited in his jail account.  This claim fails to implicate the constitution.  *See Myers v. Hundley,* 101 F.3d 542, 544 (8th Cir. 1996) (while inmates have a right to personal hygiene supplies, they may be required to pay for such supplies if they can afford to do so).  Accordingly, Plaintiff's condition of confinement claim fails as a matter of law.

20

###### 5.      Denial of medical care claims

Plaintiff claims Defendant Delaney denied him medication on March 19, 2012 and  he is being denied medical care for a hernia.  Defendants argue Plaintiff's allegations are not supported by the proof, and the medical records show Plaintiff received medication and was also taken to the doctor.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012).  To prevail on his Eighth Amendment claim, Plaintiff must prove  Defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

In order to show  he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation.  Deliberate indifference is akin to criminal

recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted).  An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment."  *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference.  *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976).  However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009).  The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record.  *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005).  Unless, however, the need for medical attention is obvious to a layperson in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay.  *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *see also Boyd v. Knox*, 47 F.3d

966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

Here, the record indicates Plaintiff received Tylenol on March 19, 2012 three separate times.  Plaintiff's Medication Log Sheet, ECF No. 50-6.  Further, Plaintiff received Tylenol or Ibuprofen every day or every other day the entire time he was incarcerated in the CCDC.  *Id.*  The record also shows Plaintiff's prescription for the Tylenol was initially to be given at pill call but then was on an as-requested-basis.  Plaintiff's Deposition, ECF No. 50-1, p. 28.  Further, Plaintiff stated in his deposition, when he filed medical requests he was taken to the doctor.  ECF No. 50-1, p. 29.

In his Response, Plaintiff specifically indicates he is not alleging he was denied Tylenol for his hernia but instead  he was denied "Alot of medication that i was receiving."  ECF No. 75, p. 34 (errors in original).  Plaintiff also disagrees with the medication logs on the record indicating he received Ibuprofen or Tylenol every day or every other day while incarcerated in the CCDC. ECF No. 75, p. 35.  Further, Plaintiff was prompted to agree or disagree with other facts on the record: (1) whether he received Tylenol on March 19, 2012 and March 20, 2012 (the days he claims he was denied medication and medical care); (2) whether he filed grievances on March 17 or 19, 2012 complaining of pain; and (3) whether, on March 19, 2012, Defendant Delaney responded to the grievance explaining to Plaintiff  he can receive his Tylenol when he requests it because it is not prescribed on a schedule.  Plaintiff responded to each of these questions in the Response stating he was without knowledge to agree or disagree with the statements.  ECF No. 75, pp. 34-36.  Additionally, when asked if he completed a medical request to receive his Tylenol, as suggested by Defendant Delaney, he responded: "Sometimes i did and Sometimes i didnt."  ECF

No. 75, p. 37 (errors in original).  Finally, Plaintiff concedes, in his Response,  he was allowed to submit medical request and was never denied a visit with a doctor.  ECF No. 75, p. 37.

The record clearly indicates Plaintiff was not denied medication or medical care.  Plaintiff states in his deposition and Response  he was taken to the doctor when he filed medical requests and the medication log indicates Plaintiff was receiving his pain medication.  Plaintiff merely disagrees with the process  he had to complete to get his pain medication, and this fails to state a claim for denial of medical care.  *See Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010); *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009).

Furthermore, Plaintiff's version of events regarding his medical care is blatantly contradicted by the record, therefore, I will not adopt it for purposes of this report and recommendation.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).   *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Lastly, I will not consider Plaintiff's argument in his Response attempting to change his claim to be one for denial of "Alot of medication that i was receiving."  Plaintiff cannot amend his claims through his Response, and even if I were to consider this new claim, the claim would fail.  The claim is vague and contradictory to the record as Plaintiff's Medication Logs shows he received at least seven (7) different types of medication regularly while incarcerated in the CCDC.  It is clear  Defendants were not deliberately indifferent to Plaintiff's medical needs.

Accordingly, there are no genuine issues of material facts as to Plaintiff's denial of medical care and medication claims and these claims fail as a matter of law.[6]

---

[6] As explained above, Plaintiff also claims he was denied mental health care, however, this claim is not addressed herein and remains.

### 6.    Failure to follow procedures

Plaintiff claims Defendants violated his constitutional rights by: (1) refusing him grievances at certain times of the day or not following the CCDC grievance procedure in addressing grievances; (2) failing to follow CCDC correspondence policy; and (3) failing to follow the CCDC handbook.  While Defendants did not move for summary judgment on Plaintiff's claims regarding the correspondence policy and handbook, I will address them here as both claims fail as a matter of law.

Plaintiff does not have an independent constitutional right to a grievance procedure.  *See Lomholt v. Holder,* 287 F.3d 683, 684 (8th Cir. 2002) (quoting *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir.1993)).  A jail administration's failure to process an inmate's grievances, without more, is not actionable under Section 1983.  *Buckley,* 997 F.2d at 495.  Accordingly, Plaintiff's claim  Defendants failed to give him grievances or failed to process the grievances in compliance with the CCDC grievance procedure, without more, fail as a matter of law.

Additionally, an internal jail policy or procedure does not create a constitutional right, nor does the failure to follow such a regulation rise to the level of a section 1983 claim.  *See Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996).  Accordingly, Plaintiff's claims regarding any violation of CCDC policies or handbook, without more, fail as a matter of law.

### 7.    Access to Courts

Plaintiff claims: (1) he was denied access to the law library; (2)  his mail to and from this Court was delayed; and (3)  he was denied a section 1983 form.  I construe all of these claims as access claims.  Plaintiff specifically claims he was completely denied access to a law library, Defendants Collier, Murphy, and Robinson denied Plaintiff mail from this Court causing the Court

to issue an order dismissing this case, and all Defendants denied him a section 1983 form. Defendants only moved for summary judgment on Plaintiff's law library claim, however, I will address all three access claims herein as they all fail as a matter of law.

The Supreme Court has held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977). Nevertheless, *Bounds* "did not create an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey,* 518 U.S. 343, 351 (1996). Instead, prison officials must provide inmates with "meaningful access to the courts," *Bounds,* 430 U.S. at 824, and providing a law library is merely one way to comply with this obligation. *See Bear v. Fayram,* 650 F.3d 1120, 1123 (8th Cir. 2011) (the constitutional requirement of access to the courts may be satisfied in a number of ways including, prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other methods). However, an inmate has no standing to pursue an access claim unless he can demonstrate  he suffered prejudice or actual injury as a result of the prison officials' conduct. *See Lewis,* 518 U.S. at 351-2; *see also Farver v. Vilches,* 155 F.3d 978, 979-980 (8th Cir.1998) (per curiam); *Klinger v. Dep't of Corr.,* 107 F.3d 609, 617 (8th Cir.1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic); *McMaster v. Pung,* 984 F.2d 948, 953 (8th Cir. 1993). "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a

26

nonfrivolous and arguably meritorious underlying legal claim.'" *Hartsfield v. Nichols,* 511 F.3d 826, 831 (8th Cir. 2008) (citations omitted).

The prison must also provide inmates with "paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them." *Bounds v. Smith,* 430 U.S. at 824-5; *see also Myers v. Hundley,* 101 F.3d 542, 544 (8th Cir.1996)(*citing, Lewis v. Casey,* 518 U.S. at 350-1). The duty to provide such allowances is constrained by the inmates' right of *meaningful* access to the courts. *Bounds v. Smith,* 430 U.S. at 824-5.

The record indicates Plaintiff was represented by an attorney in his criminal matters during his incarceration in the CCDC. Plaintiff's Deposition, ECF No. 50-1, pp. 56-57. Further, there is no allegation  Plaintiff's criminal proceedings suffered from his denial of access to a law library.

Plaintiff has also failed to allege any injury from being denied a section 1983 complaint form. Plaintiff was able to obtain a form and file this lawsuit, and he has not alleged there was a separate claim(s), from those alleged herein,  he was attempting to file when he sought the section 1983 form.

Finally, Plaintiff's claims  that he missed deadlines in this case causing the Court to issue an order to dismiss this case also fails to show actual injury. The docket in this matter reflects Plaintiff did fail to timely file a Court ordered Amended Complaint. In response to this failure, I issued a Report and Recommendation recommending this case be dismissed for Plaintiff's failure to follow the Court's orders. ECF No. 7. Before the District Judge considered the Report and Recommendation, Plaintiff filed his Amended Complaint. In response to Plaintiff filing his Amended Complaint, the District Court declined to adopt the Report and Recommendation to dismiss and ordered Plaintiff's case to proceed. The District Court's order did not impose any

sanctions on Plaintiff for the untimely filing of his Amended Complaint and this case has proceeded as if the Amended Complaint were filed in compliance with the Court order.  Therefore, Plaintiff was not prejudiced by missing the filing deadline.

Accordingly, Plaintiff has failed to state any prejudice or injury he suffered from any denial of law library access, denial of a section 1983 form, or delay in mail from the Court or mail sent to the Court in this case.  Therefore, Plaintiff has no standing to pursue an access claim against Defendants.  *See Lewis,* 518 U.S. at 351-2; *see also Farver v. Vilches,* 155 F.3d 978, 979-980 (8th Cir. 1998) (per curiam); *Grady v. Wilken*, 735 F.2d 303, 305-6 (8th Cir. 1984) (the plaintiff's failure to show  a twenty (20) day denial of mail privileges prejudiced his ongoing lawsuit resulted in the dismissal of his access to courts claim).

### 8.    Due process claims

Plaintiff claims his due process rights were violated when: (1) he was placed on "punitive lock down" on June 6, 2012 "with a court hearing per policy" and he remained in "punitive isolation or segregation for 33 days;" and (2) he was moved to Pod 17 on May 14, 20112 for "no reason at all."

Defendants argue every lock down situation cited by Plaintiff are either untrue or he was moved for safety and security reasons, therefore, no due process violation has been stated.

The law clearly indicates a pretrial detainee cannot be punished. *See Bell v. Wolfish,* 441 U.S. 520, 535 (1979). "However, not every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith v. Copeland,* 87 F.3d 265, 268 (8th Cir. 1996) (internal quotations omitted).  "Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate

28

this detention." *Bell,* 441 U.S. at 537.   When determining whether a particular restriction or condition is considered punishment, courts should consider whether the restriction or condition is reasonably related to a legitimate governmental objective.  *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992).  *See also Bell,* 441 U.S. at 539 ("if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment.").   Furthermore, courts are not concerned with *de minimis* levels of imposition on inmates.  *Id.*  The Supreme Court instructs courts to be mindful that these types of inquiries "spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility."  *Bell*, 441 U.S. at 539.

In his Amended Complaint, Plaintiff claims  he was in a fight on June 6, 2012 with another inmate and as a result of this fight he was put on "punitive lock down" "with a court hearing per policy" and  all of his property was confiscated.  Further, Plaintiff claims he was moved on May 14, 2012 for no reason.  Defendants argue Plaintiff was never placed in punitive segregation and instead only placed in administrative segregation for safety and security reasons.  Therefore, according to Defendants, Plaintiff's due process rights were not violated.

It is undisputed that Pod 5 at the CCDC is the administrative segregation pod.  The inmates in Pod 5 are separated from one another but each is allowed out of his cell for one hour each day to exercise, use the phone, and shower.  Further, the inmates in Pod 5 maintain their commissary and visitation privileges.  Delaney Affidavit, ECF No. 50-2; Plaintiff's Commissary Log, ECF No. 50-3.

Plaintiff also does not dispute he was moved around the CCDC, all outside of Pod 5, at

least six times between May 2, 2012 and June 2, 2012 in an attempt to accommodate him and maintain safety and security of the facility due to threats or altercations involving Plaintiff. Additionally, on June 2, 2012, Plaintiff was involved in an altercation with inmate Norris. After an investigation of the altercation, Plaintiff was placed in Pod 5. Plaintiff was moved from Pod 5 on July 10, 2012. Delaney Affidavit, ECF No. 50-2; Inmate Tracking/Movements Log, ECF No. 50-8. Plaintiff's commissary records also show he made purchases from the commissary throughout his incarceration at the CCDC. Plaintiff's Commissary Log, ECF No. 50-3.

Plaintiff also does not dispute, while Plaintiff alleges he was denied visitation rights while locked down in Pod 5, his visitation log shows he had two visitors between June 6, 2012 and July 10, 2012 while he was housed in Pod 5 and a total of thirty-nine (39) visitors between December 2011 and December 2012. Inmate Visitation Log, ECF No. 50-4. According to the record, the only privileges Plaintiff lost while he was locked down were television privileges and the freedom to move around as freely as when held in an open barracks pod. Lastly, Plaintiff's transfer on May 14, 2012 was from one non-segregation pod to another non-segregation pod. Inmate Tracking/Movements Log, ECF No. 50-8; Delaney Affidavit, ECF No. 50-2.

The summary judgment record shows Plaintiff's transfers were incidental to a legitimate governmental purpose. The CCDC has a legitimate interest in managing its detention facility. *Smith,* 87 F.3d at 268. The CCDC also has a legitimate interest in maintaining security in its detention facility. *Bell*, 441 U.S. at 546-7. In determining whether Plaintiff's lockdown in Pod 5 on June 6, 2012 was reasonably related to a security interest I must defer to the CCDC administrator's expert decisions unless there is substantial evidence indicating the administrator exaggerated their response to the situation prompting Plaintiff's lock down in Pod 5. *See Bell,* 441

U.S. at 540-41, n. 23.  While Plaintiff alleges Defendant Delaney's motivation for locking him down in Pod 5 was discrimination or retaliation, he concedes he was in an altercation with inmate Norris prior to being placed in Pod 5 on June 6, 2012.  Further, Plaintiff does not dispute  he was transferred on May 14, 2012 and all other times in response to altercations or threats.

Plaintiff's only argument is  the other inmates (the ones making threats or fighting him) should have been locked down instead of Plaintiff.  I am unconvinced by this argument.  I find there are no genuine issues of material fact as to whether Plaintiff's lock down, in response to violence and threats of violence, was reasonably related to the legitimate governmental objective of managing and maintaining security at the CCDC.  *See Bell,* 441 U.S. at 540-41, n. 23

Lastly, I find the restrictions placed on Plaintiff—one hour to shower, and use phone, and no television—are *de minimis,* and therefore, do not implicate the Constitution. *See Smith,* 87 F.3d at 268.  Further, Plaintiff was still afforded vitiation and commissary privileges while in segregation.

Accordingly, I find there are no genuine issues of material fact related to Plaintiff's due process claims regarding his lock down and movement around the CCDC.[7]

### 9.    Physical injury

Defendants argue  Plaintiff has failed to allege any physical injury and this failure bars his claims pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e).

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional

---

[7] As explained above, Plaintiff's due process claims relating to his property and diciplinary hearing remain.

31

injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). *See also Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004) (the PLRA limits recovery for mental or emotional injury in all federal actions brought by prisoners). While the PLRA does limit recovery on claims where the plaintiff has no physical injury it does not bar such claims—nominal damages, punitive damages, and injunctive and declaratory relief are available to a plaintiff that does not claim a physical injury. *See Royal*, 375 F.3d at 723. Therefore, I will not recommend dismissal of Plaintiff's claims at this stage based on his failure to assert a physical injury.

## IV.     CONCLUSION

Accordingly, I recommend Plaintiff's Motion for Summary Judgment (ECF No. 37) be **DENIED**. Further, I recommend Defendants Motion for Summary Judgment (ECF No. 48) be **GRANTED** in part and **DENIED** in part. Specifically, all of Plaintiff's official capacity claims should be dismissed and Plaintiff's individual capacity claims relating to the denied letter from his wife, the postcard only policy, pork-free meals, indigent items, medication, medical care for a hernia, grievance procedures, violations of CCDC policy and handbook, access to court, and lock down on June 6, 2012 and movement on May 14, 2012 should be dismissed. Defendants Loe and Woods should be dismissed from this case. This leaves for further resolution Plaintiff's individual capacity claims relating to the letter he attempted to send to his wife, discrimination claims, retaliation claims, denial of mental health care claims, and due process claims relating to the confiscation of his property and the June 6 or 7, 2012 diciplinary hearing.

**The parties have fourteen (14)  days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 8th day of September 2014.

/s/ Barry A. Bryant\
HON. BARRY A. BRYANT\
UNITED STATES MAGISTRATE JUDGE

33